HEROLD v. HEROLD.

DIVORCE—ALIMONY.
> Wife in poor physical condition given divorce on account of husband's extreme cruelty is entitled to alimony amounting to approximately one-third of his property, which is estimated to be worth from $6,000 to $8,000.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 9, 1930. (Docket No. 27, Calendar No. 34,853.) Decided June 2, 1930.

Bill by Helen Herold against George Herold for divorce. From decree for plaintiff, she appeals from alimony award. Modified and affirmed.

*Willard G. Turner, Jr.* (*Raymond J. Engle* and *R. Burr Cochran,* of counsel), for plaintiff.

BUTZEL, J. In 1923, plaintiff, at the age of 27, married defendant, then 53. They lived together for almost four years. At the time of the marriage defendant owned property of the value of between $15,000 and $20,000, consisting of two farms and considerable personal property. Plaintiff had no savings. Shortly after the marriage defendant transferred the property to the joint names of himself and wife. That plaintiff had no mercenary motives in marrying defendant is shown by the fact that she worked very hard on the farm, pitched hay, dug potatoes, and, with the exception of the plowing, she performed the work of a farm hand. She helped in the construction of the house on the farm

now occupied by defendant. She nailed the lumber onto the house up to the roof. She also did the housework. They had no children, although plaintiff states that she had two miscarriages, brought about by the rough work she was obliged to do while pregnant. She claims that this has resulted in her now being in poor physical condition.

Both plaintiff and defendant were desirous of giving up the farm, and largely through plaintiff's influence and possible persuasion, but not at all through any action in which defendant did not join, the larger farm owned by them, together with considerable personal property, was traded for an equity in some Chicago real estate. Plaintiff and defendant were unable to keep up the payments on the mortgage, and finally they each were paid $500 cash for their respective rights in this property. A sum of $2,700 was also loaned to plaintiff's mother, who secured it by a mortgage on her property in Chicago and on which she made payments from time to time. Defendant testified that this mortgage was worthless, but later stated that there was still $1,300 due on it, and that it was worth that amount. Plaintiff claims that there is only $700 still due thereon. The record is extremely meagre in regard to the details of the various transactions the parties had between themselves and with others.

After a few years the parties began to quarrel, and finally plaintiff filed a bill of divorce against the defendant, charging extreme cruelty. Plaintiff alleges that defendant claimed that he had contracted tuberculosis from her father; that defendant accused her of an attempt to poison him; that defendant had ceased to care for her because of another woman in the neighborhood of whom he had

formerly been very fond; that he had urged plaintiff
to secure a divorce, etc. During the four years of
married life, defendant lost a large part of his prop-
erty, and this may have been largely the indirect
cause of their differences. The record, however,
shows that plaintiff was not to blame for this loss,
except on account of her endeavor to make both her-
self and defendant comfortable by urging the pur-
chase of the Chicago property, which was subse-
quently lost. The circuit judge granted plaintiff a
decree. He concluded that the parties could no
longer live together, and that the testimony justi-
fied a decree in plaintiff's favor. The court, how-
ever, held that inasmuch as defendant was not well,
and that a good portion of his property had been
lost through plaintiff, the only amount she should
be entitled to for permanent alimony and for her
entirety interest in the property was the mortgage
still due from plaintiff's mother, and described in
the record as being of no value, as worth $1,300, and
also appraised by plaintiff as worth $700, the
amount she claims is still due and unpaid on it.
The record is very confusing and incomplete as to
the details of just what property was left. The
value of all of the property, including the farm, per-
sonal property, the mortgage on the Chicago prop-
erty valued at $1,300, and an $1,800 mortgage, ac-
cording to defendant's claim, amounted to $6,020.
This places the value of the homestead with farm,
in which plaintiff has an entirety interest, at $2,500.
Plaintiff, however, claims that the homestead with
the farm is worth $5,500, that the Chicago mort-
gage is worth only $700, and that the value of the
total assets is $8,320. The circuit judge found that
the only property defendant had left was his farm
and the Chicago mortgage, an old automobile, and

a few minor articles of personal property. He ignored the fact that there was also a $3,000 mortgage, upon which $200 had been paid, and which defendant had deposited with one Mr. Foote as collateral for a $1,000 loan. Defendant's equity in this mortgage, therefore, would amount to $1,800.

The judge in his opinion stated that plaintiff was the cause of defendant's losing a good part of his property. The record does not show that plaintiff should be held responsible for this loss. From the manner in which both plaintiff and defendant worked it was highly desirable that they improve their condition. They wanted to leave the farm. The fact that they made a bad business deal is no reason why plaintiff should be penalized. There was some claim that plaintiff saved some moneys out of the property, but the record gives no facts from which such a conclusion could be based. She did collect certain sums, but explained what she did with them. As far as the meagre testimony shows, she could not have put much, if anything, aside. She testified that defendant did not purchase any new clothes for her during her entire married life. The larger part of the $500 which she received upon signing off her equity in the Chicago property was spent for attorneys' fees and other expenses. Defendant also is in poor health and he should have the farm free and clear from all incumbrances. We, however, believe that the amount awarded plaintiff is inadequate. She was forced to bring the divorce proceedings on account of defendant's cruelty, and she is entitled to a reasonable amount for alimony and her dower and entirety interest in the property. There is $1,800 still due on the Foote collateral mortgage. Plaintiff should receive the further sum of $1,200, to be paid out of this mortgage, or the

proceeds thereof, if it has been paid to defendant since the hearing of this cause, said payment of $1,200 to be realized from the said $1,800 Foote collateral mortgage before defendant shall be entitled to any balance that may be due thereon. This will give plaintiff approximately one-third of defendant's property, and leave defendant the farm and other personal property, including an interest of $600 in the Foote collateral mortgage.

The decree of divorce and the assigning to plaintiff of the Chicago mortgage as part of the alimony are herewith affirmed. Plaintiff is, however, awarded the additional sum of $1,200, to be paid exclusively out of the Foote collateral mortgage, or the proceeds therefrom if it has heretofore been paid to defendant. The case is remanded to the lower court for the purpose of effecting the transfer of the $1,200 interest in the Foote collateral mortgage to plaintiff and carrying out the other terms of this decree. Plaintiff will recover costs.

WIEST, C. J., and CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.